IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION


THE SUNSHINE KIDS FOUNDATION,    §
                                 §
              Plaintiff,          §
                                 §
v.                               §
                                 §          CIVIL ACTION NO. H-09-2496
SUNSHINE KIDS JUVENILE           §
PRODUCTS, INC., SUNSHINE         §
KIDS JUVENILE PRODUCTS, LLC,     §
and SKJP HOLDINGS, LLC,          §
                                 §
              Defendants.         §


### MEMORANDUM OPINION AND ORDER


     Plaintiff, The Sunshine Kids Foundation, Inc., brings this action against defendants Sunshine Kids Juvenile Products, Inc. (SKJP, Inc.), Sunshine Kids Juvenile Products, LLC (SKJP, LLC), and SKJP Holdings, LLC, for (1) trademark infringement in violation of 15 U.S.C. § 1114, (2) false designation of origin in violation of 15 U.S.C. § 1125(a), (3) dilution in violation of 15 U.S.C. § 1125(c), (4) unfair competition in violation of Texas common law, (5) violation of the Texas anti-dilution statute, Texas Business & Commerce Code § 16.29, (6) cancellation of SKJP's trademark regis-tration under 15 U.S.C. § 1119, and (7) exemplary damages under Chapter 41 of the Texas Civil Practices and Remedies Code.  Pending before the court is Defendants' Motion to Dismiss Plaintiff's Complaint for Lack of Personal Jurisdiction and for Failure to State a Claim (Docket Entry No. 11).  "If the Court determines

jurisdiction does not exist on the current record, [plaintiff] has requested certain jurisdictional discovery."[1]   For the reasons explained below, the motion to dismiss filed by SKJP, Inc., and SKJP Holdings, LLC will be granted, and the plaintiff's request for jurisdictional discovery will be denied.

## I.  Factual Allegations

Plaintiff alleges that it is a renowned non-profit charitable organization that provides a variety of programs and events, free of charge, for children receiving cancer treatment in hospitals across the United States and Canada.  Plaintiff alleges that since at least as early as 1983 it adopted and has used continuously the name and mark "Sunshine Kids," together with various derivations thereof for the purpose of promoting its programs and marketing items such as shirts, hats, and scarves.  Plaintiff alleges that it owns six United States Federal Trademark Registrations for the Sunshine design, Sunshine Kids, Sunshine Kids Tough as a Rock, and Sunshine Kids words and design, and that it also owns Canadian Registration 436,586 for Sunshine Kids, which was registered on December 21, 1994, for "entertainment services, namely the provision of activities and programs for children with cancer and their families."[2]   Plaintiff alleges that the validity and

---

[1]Plaintiff's Response to Defendants' Motion to Dismiss (Plaintiff's Response), Docket Entry No. 16, p. 2.

[2]Original Complaint, Docket Entry No. 1, ¶ 15.

ownership of its registered marks, as well as its exclusive right to use these marks in interstate commerce has become "incontestable" under 15 U.S.C. § 1605, and 15 U.S.C. § 1115(b).[3]

Plaintiff alleges that in 2002 it learned that defendant SKJP, LLC used "Sunshine Kids" within its mark in connection with a children's product available on the web site www.mightytite.com, and that when it contacted SKJP, LLC someone answered the phone by saying simply "Sunshine Kids."[4] Plaintiff alleges that in June of 2002 its attorney wrote to SKJP, LLC pointing out (1) the length, extent, and renown of the plaintiff's activities under its marks; (2) the similarity of the target people for their activities and goods and for SKJP, LLC's goods, and (3) the likelihood of confusion caused by a second entity using "Sunshine Kids" as a mark for children's goods and services.  Plaintiff's attorney asked SKJP, LLC, as the late comer, to cease the unauthorized use. Plaintiff alleges that in a letter dated August 2002, SKJP, LLC responded that it

> (1) did not "trade under the designation Sunshine Kids";
>
> (2) considered its trademark to be "Sunshine Kids Juvenile Products" which included "distinctive design elements" . . .
>
> (3) received a registration for a design mark in 2002 having Sunshine Kids in the words of the design (the design incorporated a stick-figure for the letter 'K' for "a seat belt shortener"); and

---

[3] Id. ¶ 16.

[4] Id. ¶ 19.

> (4) it <u>only</u> sold a "MIGHTY-TITE" seat belt shortener product, although there was an interest in manufacturing other products that related to making children's vehicle car seats more safe. . .[5]

Plaintiff alleges that in October of 2002 it responded to SKJP, LLC

> (1) acknowledging Defendant's representation that it did not "trade under the designation (Sunshine Kids,)" but rather under the trademark "Sunshine Kids Juvenile Products" with its "distinctive design elements" (such as the letter K disguised); (2) affirming the understanding [that] Defendant would cease answering the phone as "Sunshine Kids;" and (3) stating the [plaintiff] would monitor the extent of actual confusion.[6]

Plaintiff alleges that in the summer of 2008 and continuing into 2009 it suddenly began receiving multiple inquiries by e-mail and phone from consumers of SKJP, LLC's products who believed that the charity was the provider of those products and that a subsequent search revealed that

> (1) "SKJP" had registered a "word mark" . . . for SUNSHINE KIDS JUVENILE PRODUCTS for fourteen goods. . . .[7]
>
> (2) Defendants' earlier "distinctive" design element had been changed to clearly recite "Kids."
>
> (3) [SKJP, Inc.] had filed on May 4, 2009 an application to register the "word mark" SUNSHINE KIDS for <u>29</u> goods in <u>three</u> international classifications of [child safety products] . . . .

---

[5]<u>Id.</u> ¶ 21.

[6]<u>Id.</u> ¶ 22.

[7]Plaintiff's Original Complaint does not identify which of the SKJP entities registered this mark, but Exhibit 2 attached to Plaintiff's Response shows that on April 11, 2006, SKJP Holdings, LLC filed a request for registration of the trademark "Sunshine Kids Juvenile Products."

(4)  [SKJP, Inc.'s] sworn declaration in their recent application was that it, or its predecessor in interest, had used the mark Sunshine Kids <u>since May 8, 2000</u> in connection with at least one good in <u>each</u> of the above <u>three</u> international classifications of goods.

(5)  [SKJP, Inc.'s] sworn declaration failed to acknowledge the [plaintiff's] prior marks, or useage which would likely cause confusion based upon prior correspondence with the [plaintiff's] counsel . . . .

(6)  Defendants displayed SUNSHINE KIDS as a mark on [their] <u>www.skjp.com</u> website, and clearly traded under "Sunshine Kids . . ." and also offer their products for sale in Houston, Texas stores.

(7)  On Amazon.com an article about an annual golf tournament sponsored by New Jersey Prudential Properties which raises funds for the [plaintiff], prompts the user to "look for the other Sunshine Kids products" on pages devoted to selling [defendants'] products.[8]

Plaintiff alleges that the defendants' use of the mark "Sunshine Kids" in connection with the sale and distribution of children's products supports the claims asserted in this action.[9]

## II.  <u>Motion to Dismiss for Lack of Personal Jurisdiction</u>

Plaintiff alleges:

6.  This Court has personal jurisdiction over the Defendants because the Defendants have purposely availed themselves of this forum by their activities in this District, and the cause of action and origination of this complaint arises out of those activities. . . .

7.  Upon information and belief, many customers of Defendants come from this District, and have purchased Defendants' goods in stores, over the telephone or through the Internet.[10]

--------

[8]Original Complaint, Docket Entry No. 1, ¶ 24.

[9]<u>Id.</u> ¶¶ 34-72.

[10]<u>Id.</u> ¶¶ 6-7.

Defendants SKJP, Inc. and SKJP Holdings, LLC argue that all of the claims asserted against them should be dismissed pursuant to Rule 12(b)(2) for lack of personal jurisdiction because they have no contacts with the state of Texas.  In support of this argument defendants submit the Declaration of Brad Keller, who states:

> 2.  I am the President for Defendant Sunshine Kids Juvenile Products, LLC ("SKJP LLC").  In my role as President of SKJP LLC, I have obtained personal knowledge of the activities of Defendants Sunshine Kids Juvenile Products, Inc. ("SKJP Inc.") and SKJP Holdings, LLC ("SKJP Holdings").

> 3.  SKJP LLC markets, sells and distributes a line of child seat products and related accessories.  Its offices are in Sumner, Washington.  SKJP LLC owns and operates the website www.SKJP.com, and it primarily markets and sells its products to distributors and realtors who in turn sell the product to families and the general public.  Neither SKJP Inc. nor SKJP Holdings markets, sells or distributes any products or services in the United States.  SKJP Inc. is a Canadian corporation with an office in Waterloo, Ontario.  SKJP Inc.'s sole business is to distribute products to customers located in Canada.  It has never made a sale to a resident of Texas, it is not registered to do business in Texas, it does not maintain a registered agent in Texas and owns no property there.  SKJP Inc. does not direct any advertising to Texas, and it has no offices, employees, distributors or sales agents either in or assigned to Texas.  SKJP Inc. does not maintain a bank account in Texas nor is it obligated to pay taxes in Texas.  SKJP Inc. has no ownership in Defendant SKJP LLC and vice-versa.

> 4.  SKJP Holdings does not own or lease any property in Texas.  SKJP Holdings does not have an office in Texas, nor does it have a telephone listing in Texas.  SKJP Holdings does not have any employees in Texas.  SKJP Holdings is not registered to do business in Texas.  SKJP Holdings does not maintain a bank account in Texas, nor is it obligated to pay taxes in Texas.

-6-

5.   With the exception of this lawsuit, neither SKJP
Inc. nor SKJP Holdings has [n]ever been a party to any
lawsuit in a Texas state or federal court.

6.   Neither SKJP Inc. nor SKJP Holdings has ever
purposefully directed or specifically targeted any
advertising, promotional materials, or other activities
of any nature at Texas residents.

7.   SKJP Holdings is a Florida limited liability
corporation with its sole office located in Naples,
Florida.  It does not sell, market, distribute any goods
or services whatsoever.  It is simply a holding company
for certain intellectual property assets, namely
trademarks and patents.

8.   Through this lawsuit I have learned that a recent
trademark registration was applied for by SKJP Inc.  That
was a mistake and the application will be assigned to
SKJP Holdings.[11]

## A.   Standard of Review

When a foreign defendant moves to dismiss for lack of personal

jurisdiction under Federal Rule of Civil Procedure 12(b)(2), "the

plaintiff 'bears the burden of establishing the district court's

jurisdiction over the defendant.'"   Quick Technologies, Inc. v.

Sage Group PLC, 313 F.3d 338, 343 (5th Cir. 2002), cert. denied,

124 S.Ct. 66 (2003) (quoting Mink v. AAAA Development LLC, 190 F.3d

333, 335 (5th Cir. 1999)).  "When the district court rules on a

motion to dismiss for lack of personal jurisdiction 'without an

evidentiary hearing, the plaintiff may bear his burden by

---

[11]Declaration of Brad Keller in Support of Defendants' Motion
to Dismiss for Lack of Personal Jurisdiction, attached to
Defendants' Motion to Dismiss Plaintiff's Complaint for Lack of
Personal Jurisdiction and for Failure to State a Claim (Defendants'
Motion), Docket Entry No. 11, ¶¶ 2-8.

presenting a *prima facie* case that personal jurisdiction is proper.'" Id. "In making its determination, the district court may consider the contents of the record before the court at the time of the motion, including 'affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery.'" Id. at 344. The court must accept as true uncontroverted allegations in the plaintiff's complaint and must resolve factual conflicts in the plaintiff's favor, but need not credit conclusory allegations even if uncontroverted. See Panda Brandywine Corp. v. Potomac Electric Power Co., 253 F.3d 865, 869 (5th Cir. 2001). "Absent any dispute as to the relevant facts . . . whether personal jurisdiction may be exercised over a nonresident defendant is a question of law." Ruston Gas Turbines, Inc. v. Donaldson Co., Inc., 9 F.3d 415, 418 (5th Cir. 1993).

**B.   Analysis**

   1.   Applicable Law

   Exercise of personal jurisdiction over a nonresident defendant comports with federal due process guarantees when the nonresident defendant has established minimum contacts with the forum state, and the exercise of jurisdiction "does not offend 'traditional notions of fair play and substantial justice.'" International Shoe Co. v. State of Washington, Office of Unemployment Compensation and Placement, 66 S.Ct. 154, 158 (1945). Once a plaintiff satisfies these two requirements a presumption arises that jurisdiction is

-8-

reasonable, and the burden of proof and persuasion shifts to the defendant opposing jurisdiction to present "a compelling case that the presence of some other considerations would render jurisdiction unreasonable." Burger King Corp. v. Rudzewicz, 105 S.Ct. 2174, 2185 (1985).

For claims arising under state law, federal courts "may assert [personal] jurisdiction if:  (1) the state's long-arm statute applies, as interpreted by the state's courts; and (2) if due process is satisfied under the [F]ourteenth [A]mendment to the United States Constitution." Johnston v. Multidata Systems International Corp., 523 F.3d 602, 609 (5th Cir. 2008).  For claims arising under federal law, federal courts may assert personal jurisdiction over defendants who lack sufficient contacts to satisfy the due process concerns of any particular state's long-arm statute pursuant to Federal Rule of Civil Procedure 4(k)(2) when the defendant has sufficient contacts with the nation as a whole to justify the imposition of United States' law. See World Tanker Carriers Corp. v. M/V Ya Mawlaya, 99 F.3d 717, 720 (5th Cir. 1996).

The Texas long-arm statute authorizes suit against nonresidents "[i]n an action arising from the nonresident's business in this state." Tex. Civ. Prac. & Rem. Code § 17.043. The Texas Supreme Court has stated that the long-arm statute's "broad doing-business language allows the statute to 'reach as far as the federal constitutional requirements of due process will allow.'" See Moki Mac River Expeditions v. Drugg, 221 S.W.3d 569,

575 (Tex. 2007) (quoting <u>Guardian Royal Exchange Assurance, Ltd. v.</u> <u>English China Clays, P.L.C.</u>, 815 S.W.2d 223, 226 (Tex. 1991)).  <u>See</u> <u>also</u> <u>Schlobohm v. Schapiro</u>, 784 S.W.2d 355, 357 (Tex. 1990) (recognizing that the limits of the Texas long-arm statute are coextensive with the limits of constitutional due process guarantees).

    2.  <u>Application of the Law to the Facts</u>

       (a)  Minimum Contacts Analysis

"There are two types of 'minimum contacts':  those that give rise to specific personal jurisdiction and those that give rise to general personal jurisdiction."  <u>Lewis v. Fresne</u>, 252 F.3d 352, 358 (5th Cir. 2001).  Plaintiff's allegations are based on the assertion of specific, not general, jurisdiction.  Specific jurisdiction exists where a defendant "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws."  <u>Burger</u> <u>King</u>, 105 S.Ct. at 2183.  The Texas Supreme Court has recently explained that there are three parts to a purposeful availment inquiry.  First, only the defendant's contacts with the forum are relevant, not the unilateral activity of another party or a third person.  Second, the contacts relied upon must be purposeful rather than random, fortuitous, or attenuated.  Finally, the defendant must seek some benefit, advantage, or profit by availing itself of the jurisdiction.  A defendant may purposefully avoid a particular

-10-

forum by structuring its transactions in such a way as to neither profit from the forum's laws nor subject itself to jurisdiction there.  Moki Mac, 221 S.W.3d at 575 (citing Burger King, 105 S.Ct. at 2182).  Since specific jurisdiction is claim specific, the plaintiff must show that specific jurisdiction exists as to each of its claims against SKJP, Inc., and SKJP Holdings, LLC.  See Seiferth v. Helicopteros Atuneros, Inc., 472 F.3d 266, 274 (5th Cir. 2006).

Defendants SKJP, Inc. and SKJP Holdings, LLC argue that the claims asserted against them should all be dismissed pursuant to Rule 12(b)(2) for lack of personal jurisdiction because plaintiffs have failed to carry their burden of presenting prima facie evidence that they purposefully established minimum contacts with Texas that are sufficient to give rise to either specific or general jurisdiction.  Plaintiff responds that the defendants' contacts with Texas are sufficient to establish personal jurisdiction because (1) "the related Sunshine LLC entity has conceded jurisdiction is proper,"[12] (2) "[t]hese defendants license the marks to Sunshine, LLC who admittedly uses the marks to carry out the allegedly infringing conduct in Texas,"[13] and (3) "the presumption of corporate separateness with Sunshine LLC—who has

---

[12]Plaintiff's Response to Defendants' Motion to Dismiss (Plaintiff's Response), Docket Entry No. 16, p. 2.

[13]Id. at 6.

conceded to jurisdiction—has been overcome due to overwhelming evidence that the three entities are not separate at all."[14]

### (1)  Related Parties

Citing <u>Denison Mattress Factory v. Spring-Air Co.</u>, 308 F.2d 403 (5th Cir. 1962), plaintiff argues that the court may assert personal jurisdiction over SKJP, Inc. and SKJP Holdings, LLC because "the related Sunshine LLC entity has conceded jurisdiction is proper."[15]  Regarding SKJP, Inc., plaintiff argues that

> [i]n the Motion [to Dismiss], Sunshine Inc. alleges that its business is to distribute solely in Canada. . . This is contradicted by the sworn declaration filed by Sunshine Inc. in the United States Patent and Trademark Office ("PTO") that Sunshine Inc. is using the mark in commerce or its related party is using the SUNSHINE KIDS mark . . . "Commerce" under the federal trademark statutes is defined as "all commerce which may be lawfully regulated by Congress."  15 U.S.C. § 1127. Thus, by Sunshine Inc.'s admission it is using the trademark alleged to infringe in the U.S.[16]

Regarding SKJP Holdings, LLC plaintiff argues that

> personal jurisdiction exists due to such jurisdiction admittedly existing over Sunshine LLC.  Specifically, Sunshine LLC has consented to jurisdiction because it sells products in Texas . . . The defendants further admit that Sunshine Holdings is an IP holding company . . . and in fact Sunshine Holdings is the registered owner of SUNSHINE KIDS JUVENILE PRODUCTS mark . . . As owner of the mark, Sunshine Holdings is legally obligated to monitor the quality of the products to which the mark is applied in commerce.  Thus, Sunshine Holdings has been monitoring the sales which give rise to Sunshine LLC's

---

[14]<u>Id.</u> at 8.

[15]<u>Id.</u> at 2.

[16]<u>Id.</u> at 3.

personal jurisdiction and is itself subject to personal jurisdiction in Texas.[17]

The court is not persuaded that either the PTO filing attached to the plaintiff's response in opposition to the defendants' motion to dismiss, or the Fifth Circuit's decision in <u>Denison Mattress Factory</u>, 308 F.2d at 403, supports the assertion of personal jurisdiction over SKJP, Inc., or SKJP Holdings, LLC merely because "the related Sunshine LLC entity has conceded jurisdiction is proper."[18]

In the PTO filing on which the plaintiff relies, the applicant, SKJP Holdings, LLC, states that "[t]he applicant, or the applicant's related company or licensee, is using the mark in commerce."[19] Citing the declaration of SKJP, LLC's president, Brad Keller, defendants assert that the "'related third party' that is using the mark is Defendant Sunshine LLC, which is the only entity that is actually selling goods and using the mark in commerce."[20] In one of two declarations submitted in support of defendants' motion to dismiss, Brad Keller states that

> [t]he only entity that is using the SUNSHINE KIDS mark in commerce in the United States is SKJP LLC. SKJP Holdings is the owner of this mark as well as the SUNSHINE KIDS JUVENILE PRODUCTS mark and licenses their use to SKJP

---

[17]<u>Id.</u> at 4.

[18]<u>Id.</u> at 2.

[19]<u>Id.</u>

[20]Defendants' Reply to Plaintiff's Response to Defendants' Motion to Dismiss (Defendants' Reply), Docket Entry No. 17, p. 3.

> LLC.  The license is not a formal agreement but one in
> which SKJP LLC is allowed to use the mark and nothing
> more.  SKJP Holdings has no ability to either monitor or
> control the use of these marks nor does it monitor or
> control the quality of the products sold by SKJP LLC.
> Neither SKJP Holdings nor SKJP Inc. participate
> whatsoever in the distribution of products by SKJP LLC.
> Neither SKJP Holdings nor SKJP Inc. had any role in
> decision by SKJP LLC as to what products to market and
> how to do so, including the decision to expand its
> product offerings over the years. . .[21]

Assignments and licensing arrangements among holders of trademark

rights are common and are provided for by the Lanham Act.  See 15

U.S.C. §§ 1060 (assignment of marks), 1055 (use of marks by related

companies).  See Moore Business Forms, Inc. v. Ryu, 960 F.2d 486,

489 (5th Cir. 1992) ("A trademark owner may grant a license and

remain protected provided quality control of the goods and services

sold under the trademark by the licensee is maintained.").  "The

term 'related company' means any person whose use of a mark is

controlled by the owner of the mark with respect to the nature and

quality of the goods or services on or in connection with which the

mark is used."  15 U.S.C. § 1127.

        In Denison Mattress Factory, 308 F.2d at 403, the Fifth

Circuit upheld a licensor's requirement in its trademark license

agreements that its bedding manufacturer-licensees purchase all

their tacking, inner spring units, and labels from the licensor as

a reasonable means on the part of the licensor to control the

---

[21]Declaration of Brad Keller in Support of Defendant's Motion
to Dismiss for Lack of Personal Jurisdiction, attached to
Defendants' Reply, Docket Entry No. 17, ¶ 4.

nature and quality of its trademarked bedding.  The court rejected plaintiff's argument that the license agreements were illegal tying arrangements explaining that "[i]f the registrant of a trademark allows or persists in allowing others to misuse his rights, he may, after an appropriate time, find that he has lost his rights through constructive abandonment," id. at 409, and that "[t]he trademark would be of no worth unless the public could be sure that every mattress which bore that mark was uniform both in exterior design and interior quality."  Id. at 410-411.

    The Fifth Circuit's opinion in Denison Mattress Factory stands for the principle that a trademark owner has an "affirmative duty to itself and to the public to invoke some kind of control and restraint upon its various licensees to prevent losing its property rights thereunder," 308 F.2d at 409, and that without adequate control of its licensees, a court may find that an owner has abandoned the trademark, in which case the owner would be estopped from asserting rights to the mark.  See Kentucky Fried Chicken Corp. v. Diversified Packaging Corp., 549 F.2d 368, 387 (5th Cir. 1977).  Nevertheless, plaintiff has not cited and the court is not aware of any case in which a licensor's exercise of quality control over a licensee has been held sufficient to support the exercise of personal jurisdiction over a licensor who otherwise lacks contact with a forum state.  Accordingly, the court is not persuaded that the exercise of personal jurisdiction over SKJP, Inc. and SKJP

-15-

Holdings, LLC is proper merely because the related Sunshine LLC entity has conceded jurisdiction is proper.

### (2)   Licensor/Licensee Relationship

Plaintiff argues that the court may properly assert personal jurisdiction over SKJP, Inc. and SKJP Holdings, LLC because "[t]hese defendants license the marks to Sunshine, LLC, who admittedly uses the marks to carry out the allegedly infringing conduct in Texas."[22]   Defendants contend that "the mere existence of a licensor-licensee relationship, without more, provides an insufficient basis with which to impute the contacts of a licensee onto the licensor for purposes of establishing personal jurisdiction."[23]

#### (i)   Licensee Acts on Behalf of Licensor

Citing Digi-Tel Holdings, Inc. v. Proteq Telecommunications (PTE), Ltd., 89 F.3d 519, 524 (8th Cir. 1996), plaintiff argues that the court may properly assert personal jurisdiction over SKJP, Inc. and SKJP Holdings, LLC because

> Sunshine LLC's Texas activities are certainly carried out on behalf of its licensors Sunshine Inc. and Sunshine Holdings.  Both entities own their marks only through the use of Sunshine LLC, and both licensors are presumed to monitor and control the quality of the goods being sold under the marks.[24]

-----

[22]Plaintiff's Response, Docket Entry No. 16, p. 6.

[23]Defendants' Reply, Docket Entry No. 17, p. 3.

[24]Plaintiff's Response, Docket Entry No. 16, p. 6.

In Digi-Tel Holdings, 89 F.3d at 523-25, the plaintiff argued
that the district court erred by refusing to impute a parent
company's contacts with the forum state to its subsidiary for
purposes of establishing personal jurisdiction.    Citing Burger
King, 105 S.Ct. at 2186 n.22, the Eighth Circuit recognized that
"[i]n determining whether 'minimum contacts' exist, contacts with
the forum state that are made on behalf of the defendant by others
may be considered."  Id. at 524.  The Eighth Circuit explained that

> [t]he Supreme Court has indicated that 'when commercial
> activities are carried on in behalf of an out-of-state
> party those activities may sometimes be ascribed to the
> party, at least where [it] is a primary participan[t] in
> the enterprise and has acted purposefully in directing
> those activities.' . . .  In [Bell Paper Box, Inc. v.]
> U.S. Kids, Inc., 22 F.3d 816 [(8th Cir. 1994)], this
> court considered a visit by an independent businessman on
> behalf of the defendant to plaintiff's place of business
> as a contact between defendant and the forum.  The court
> noted that the businessman lacked any independent
> relationship with the plaintiff and had no reason to
> visit plaintiff's business other than as defendant's
> agent.  Id. at 819 n.1.

Id.  Observing that the parent company in Digi-Tel had applied for
a Minnesota copyright and had sent two representatives to visit the
plaintiff in Minnesota, the Eighth Circuit concluded that even if
these acts were imputed to the subsidiary, they were not sufficient
to support the exercise of personal jurisdiction over the
subsidiary absent "factual support in the record to create an
inference that the . . . trademark application was filed at the
direction of or primarily for the benefit of [the subsidiary],"
id., or that "the meeting in Minnesota was not for [the parent

-17-

company's] own business purposes but was directed by or primarily for the benefit of [the subsidiary]." Id. The facts now before the court warrant the same result.

Asserting that SKJP, Inc. is the owner of the "Sunshine Kids" mark, that SKJP Holdings, LLC is the owner of the "Sunshine Kids Juvenile Products" mark, and that "[t]hese defendants license the marks to [SKJP, LLC], who admittedly uses the marks to carry out the allegedly infringing conduct in Texas,"[25] plaintiff urges the court to impute SKJP, LLC's activities in Texas to SKJP, Inc., and SKJP Holdings, LLC because SKJP, LLC's "activities are certainly carried out on behalf of its licensors."[26] However, like the plaintiff in Digi-Tel, the plaintiff in this case has failed to cite any facts in the record from which the court could infer that the activities of SKJP, LLC in Texas were conducted at the direction of and/or primarily for the benefit of SKJP, Inc. and/or SKJP Holdings, LLC, or that either of these two defendants has been a primary participant in SKJP, LLC's enterprise or has acted purposefully in directing the activities of SKJP, LLC. Nor has the plaintiff cited any factual evidence in the record that contradicts the declaration of SKJP, LLC's President, Brad Keller, that

> SKJP Holdings has no ability to either monitor or control the use of these marks nor does it monitor or control the quality of the products sold by SKJP LLC. Neither SKJP Holdings nor SKJP Inc. participate whatsoever in the distribution of products by SKJP LLC. Neither SKJP

---

[25]Plaintiff's Response, Docket Entry No. 16, p. 6.

[26]Id.

-18-

> Holdings nor SKJP Inc. had any role in decision by SKJP
> LLC as to what products to market and how to do so,
> including the decision to expand its product offerings
> over the years.  Finally, SKJP LLC is not the agent of
> either SKJP Holdings [n]or SKJP Inc.[27]

Absent evidence from which the court could infer that the activities of SKJP LLC in Texas were conducted at the direction of, and/or for the benefit of, SKJP, Inc. and/or SKJP Holdings, LLC, the court concludes that it is unable to exercise personal jurisdiction over either of these two defendants.

### (ii)  <u>Stream of Commerce Analysis</u>

Citing <u>Isbell v. DM Records, Inc.</u>, 2004 WL 1243153 (N.D. Tex. 2004) (unpublished), plaintiff argues that "the licensor/licensee relationship creates jurisdiction over Sunshine Inc. and Sunshine Holdings pursuant to a 'stream of commerce' analysis."[28]  Plaintiff explains that in

> <u>Isbell</u>, the court found that a copyright infringer became
> subject to jurisdiction in Texas by placing the
> infringing works into the stream of commerce with the
> knowledge that the works would be played in Texas.  *Id.*
> at *25-34.  Here, licensors Sunshine Inc. and Sunshine
> Holdings licensed their marks for Sunshine LLC to make
> and sell infringing goods all over the country, including
> Texas.  Legally, Sunshine Inc. and Sunshine Holdings are
> the beneficiaries of all the good will associated with
> Sunshine LLC's sales of product in Texas.[29]

---

[27]Declaration of Brad Keller in Support of Defendant's Motion to Dismiss for Lack of Personal Jurisdiction, attached to Defendants' Reply, Docket Entry No. 17, ¶ 4.

[28]Plaintiff's Response, Docket Entry No. 16, p. 8.

[29]<u>Id.</u>

In <u>Isbell</u> the court explained that

[t]o establish personal jurisdiction under the stream of
commerce test . . . the plaintiff would have to present
a prima facie case that: (1) the defendant delivered its
allegedly infringing work into the stream of commerce
with the expectation that the work would make its way
into the forum state, . . . and (2) there is a connection
between the plaintiff's injuries, the forum state, and
the defendant delivering the infringing work into the
stream of commerce.

<u>Id.</u> at *9.  The court found that the plaintiff's allegations that

the defendant improperly sold recordings of musical compositions in

Texas through a distribution agreement with another entity, that

the distribution agreement with that other entity reflected the

defendant's expectation of, and financial interest in, having its

recordings distributed throughout the United States, including

Texas, that the subject compositions were for sale on the

defendant's label in Texas, and that the defendant exploited the

copyrights in the subject compositions by licensing and receiving

royalty income from third parties for inclusion of those

compositions on records and movies sold nationally, were sufficient

to exercise specific jurisdiction over the defendant under the

stream of commerce analysis.

Citing <u>Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc.</u>,

148 F.3d 1355 (Fed. Cir. 1998), SKJP, Inc. and SKJP Holdings, LLC

argue that the stream of commerce analysis does not support the

exercise of personal jurisdiction over them because neither of them

has "actually distributed any of the allegedly infringing products

(or any products whatsoever) or placed [any products] into the

stream of commerce."[30]   In <u>Red Wing Shoe</u> the plaintiff sought
declaratory judgment against a nonresident defendant after the
defendant accused the plaintiff of patent infringement.   The
plaintiff argued that the nonresident defendant was subject to
personal jurisdiction because thirty-four of its licensees sold
products in Minnesota.   However, since it was undisputed that the
nonresident defendant did not manufacture or sell any product in
Minnesota or any other state, the Federal Circuit concluded that
the Minnesota court could not exercise personal jurisdiction over
the nonresident defendant.   Explaining that the licenses issued by
the nonresident defendant were merely covenants not to sue and were
not products placed in the stream of commerce, and that "doing
business with a company that does business in Minnesota is not the
same as doing business in Minnesota," <u>id.</u> at 1361, the Federal
Circuit rejected the plaintiff's attempt to characterize the
nonresident defendant's licensees as a "distribution channel" that
placed products in the stream of commerce.   <u>Id.</u>

     Here, it is undisputed that like the nonresident defendant in
<u>Red Wing Shoe</u>, 148 F.3d at 1355, SKJP, Inc. and SKJP Holding, LLC
do not manufacture or sell any products in Texas or anywhere else
in the United States.   Moreover, plaintiff has neither alleged nor
presented any factual evidence from which the court could infer
that SKJP, Inc. and/or SKJP Holdings, LLC had a financial interest

---

[30]Defendants' Reply, Docket Entry No. 17, p. 9.

in having SKJP products distributed in Texas, created, controlled, or employed the distribution system that brought SKJP products to Texas, or that the license agreements these two defendants have with SKJP, LLC do more than give SKJP, LLC the right to use the "Sunshine Kids" and "Sunshine Kids Juvenile Products" marks without risk of being sued by the marks' owners.  Under these circumstances the stream of commerce analysis does not support the exercise of personal jurisdiction over SKJP, Inc. and/or SKJP Holdings because the only "product" provided by the alleged license agreements is a "covenant to sue," which courts have uniformly held is not a product sold in the stream of commerce.  See id. at 1361-1362 (declining to find that license not to sue was a product placed in the stream of commerce or that licensees served as distribution channels).  See also Nordica USA Corp. v. Ole Sorensen, 475 F.Supp.2d 128, 138 (D.N.H. 2007); PrimeSource Building Products, Inc. v. Phillips Screw Co., 2008 WL 779906, *4-*6 (N.D. Tex. 2008) (unpublished).

### (iii)   Effects Test

Citing Calder v. Jones, 104 S.Ct. 1482 (1984), the plaintiff argues that the court may properly assert personal jurisdiction over SKJP, Inc. and SKJP Holdings, Inc., because the licensor/licensee relationship that they each have with SKJP, LLC implicates the "effects test."[31]  Under the "effects test" a court

---

[31] Id.

may properly assert personal jurisdiction over a nonresident defendant who has committed an act outside of the forum state that was intended to and does in fact cause injury within the forum. Id. at 1487.  See also Guidry v. United States Tobacco Co., Inc., 188 F.3d 619, 628 (5th Cir. 1999) ("Even an act done outside the state that has consequences or effects within the state will suffice as a basis of jurisdiction in a suit arising from those consequences if the effects are seriously harmful and were intended or highly likely to follow from the nonresident defendant's conduct.").

Citing Isbell, 2004 WL at 1243153, and Astro-Med, Inc. v. Nihon Kohden American, Inc., ____ F.3d ____, 2009 WL 3384786, *5 (1st Cir. October 22, 2009), plaintiff argues that the "effects test" supports the court's exercise of personal jurisdiction over SKJP, Inc. and SKJP Holdings, LLC because each of these defendants could reasonably foresee that their licensee, SKJP, LLC, would use their marks to cause harm in Texas.  Plaintiff explains that

> before Sunshine Holdings and Sunshine Inc. asserted ownership of the mark and assumed responsibility for the actions concomitant with said ownership, Sunshine Holdings and Sunshine Inc. knew, based on Sunshine LLC's 2002 correspondence with the Sunshine Kids Foundation, that enlarged distribution of products under the Sunshine Kids marks was likely to cause harm in Texas.  Such harm was a foreseeable effect.  Sunshine Holdings and Sunshine Inc. ran the risk, and knew that they were running the risk, that an ensuing suit would be instituted in Texas in regard to said ownership and distribution of products.  Sunshine Holdings' and Sunshine Inc.'s actions were a cause of the asserted tort and injury.[32]

---

[32]Plaintiff's Response, Docket Entry No. 16, p. 7.

The court is not persuaded that personal jurisdiction may properly be exercised over SKJP Inc. and/or SKJP Holdings, LLC pursuant to the "effects test" because the factual basis of the case now before the court is distinguishable from the cases that the plaintiff cites in support of this argument, and plaintiff fails to cite any facts in the record demonstrating how and/or why SKJP, Inc. and/or SKJP Holdings, LLC knew or should have known about the 2002 correspondence between plaintiff's attorney and SKJP, LLC.

In Isbell the plaintiff alleged that the defendant licensed certain musical compositions to distributors, third-party labels, and performance rights organizations for sale or performance in Texas.  The court based its finding of personal jurisdiction, in part, on the fact that the plaintiff had alleged "facts sufficient to show that [the defendant] intentionally aimed its allegedly tortious conduct at Texas, knowing that [the plaintiff] would feel the effects [t]here."  2004 WL 1243153, *11.

In Astro-Med, 2009 WL at 3384786, a Rhode Island plaintiff alleged a claim for tortious interference with a contractual relationship arising from a nonresident defendant's hiring of one of its employees.  The nonresident defendant argued that because it was a California corporation and because all its direct dealings with the employee  at issue -- who was a Florida resident -- had taken place in either California or Florida, jurisdiction did not lie in Rhode Island.  Recognizing that "[c]onsistent with Calder v.

-24-

_Jones_ . . . a defendant 'need not be physically present in the forum state to cause injury (and thus "activity" for jurisdictional purposes) in the forum state,'" _id._ at *5, the First Circuit nevertheless rejected the defendant's argument because before the nonresident defendant hired the plaintiff's employee the nonresident defendant

> knew that the [plaintiff] was located in Rhode Island, that [the employee] had entered into the Employee Agreement in Rhode Island, that the contract specified it would be governed by Rhode Island law, that the contract contained non-competition and non-disclosure provisions, and that by virtue of the contract, [the employee] had consented to the exclusive jurisdiction of the courts of Rhode Island over any disputes related to the contract. Further, [the nonresident defendant] had sought and obtained legal advice that by hiring [the employee], it was exposing itself to some legal risk. Thus [the nonresident defendant] knew that by employing [the plaintiff's employee], it was running the risk that [the employee] would thereby have breached his Rhode Island contract with a Rhode Island company and any ensuing suit would be initiated in Rhode Island and interpreted under Rhode Island law.

_Id._

Here, the plaintiff has neither alleged nor proffered any facts from which the court could infer that SKJP, Inc. and/or SKJP Holdings, LLC knew about the 2002 correspondence between its attorney and SKJP, LLC or could have reasonably foreseen that their licensee, SKJP, LLC, would sell allegedly infringing products in Texas or that the marketing of such products in Texas would cause the plaintiff to feel harm there. Absent such facts, plaintiff's reasoning would stretch the "effects test" beyond its existing limits to encompass essentially all licenses to allegedly

infringing material, thereby subjecting virtually all licensors to personal jurisdiction in any forum in which one of their licensees did business.  Because the plaintiff has merely surmised the role that SKJP, Inc. and SKJP Holdings, LLC played in causing its injuries, but has neither cited nor proffered factual evidence showing that the licensing of the marks to SKJP, LLC -- as opposed to SKJP, LLC's marketing of products with those marks -- was intentionally directed at Texas knowing that the plaintiff would feel harmful effects there, the court is not persuaded that the "effects test" supports the exercise of personal jurisdiction over either SKJP, Inc. or SKJP Holdings, LLC.

### (iv)   <u>Agency Relationship</u>

Citing <u>Kuenzle v. HTM Sport-Und Freizeitgerate AG</u>, 102 F.3d 453, 459 (10th Cir. 1996), plaintiff argues that "the facts suggest the existence of an agency relationship between licensee and licensor, and such a relationship allows the acts of the licensee to be attributed to the licensor."[33]  Plaintiff explains that "[t]he agency relationship is suggested due to the control the licensors Sunshine Inc. and Sunshine Holdings exert over Sunshine LLC, as well as the common ownership and management."[34]  However, instead of citing factual evidence showing that the licensors control SKJP,

_____

[33]<u>Id.</u> at 8.

[34]<u>Id.</u>

LLC, the plaintiff contends that "Sunshine LLC . . . exercises
complete control over Sunshine Holdings [because a]s admitted in
the [defendants' m]otion [to dismiss], Sunshine Holdings functions
as an intellectual property holding company for SKJP, LLC,"[35] and
that "Sunshine Inc. never denies it is separate and not controlled
by Sunshine LLC."[36]  As evidence that SKJP, LLC and SKJP Holdings,
LLC share common ownership and management, the plaintiff cites
Florida secretary of state records showing that SKJP, LLC and SKJP
Holdings, LLC share the same corporate address in Florida (7117
Pelican Bay Blvd., Apt. 804, Naples, Florida 34108) and that
Constance Berger, the sole managing member of SKJP, LLC, is one of
SKJP Holdings, LLC's two managers.[37]  As evidence that SKJP, LLC and
SKJP, Inc. share common ownership and management, plaintiff cites
Washington secretary of state records showing that Brad Keller
serves as SKJP, LLC's registered agent and as one of its two
managing members,[38] and that a filing made with the PTO on behalf
of SKJP, Inc. was signed by Brad Keller as president.[39]  Plaintiff
also states that a comparison of these records shows that SKJP, LLC

---

[35]Id. at 9.

[36]Id. at 11.

[37]Exhibit 3 attached to Plaintiff's Response, Docket Entry
No. 16.

[38]Exhibit 4 attached to Plaintiff's Response, Docket Entry
No. 16.

[39]Exhibit 1 attached to Plaintiff's Response, Docket Entry
No. 16.

and SKJP, Inc. operate from the same corporate address in Sumner, Washington.

In <u>Kuenzle</u> the court was "persuaded that in the absence of an agency relationship, the acts of a distributor are not ordinarily attributable to a foreign manufacturer for purposes of establishing general jurisdiction." 102 F.3d at 459. The court explained that

> [a]n agency relationship is "the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." . . . "There can be no agency relationship unless the factual element of control is present." . . . An agency relationship cannot be presumed, but rather must be clearly demonstrated.

<u>Id.</u> (citations omitted). Applying this standard the court concluded that "[t]he record fails to demonstrate the existence of an agency relationship" because "the record fails to establish the elements of control and consent required of any express or implied agency relationship." <u>Id.</u> at n.9. Accordingly, the court held that the plaintiffs failed to meet their <u>prima facie</u> burden of establishing a factual basis for the exercise of general jurisdiction over the defendant. <u>Id.</u>

"Under Texas law '[a]gency is the consensual relationship between two parties when one, the agent, acts on behalf of the other, the principal, and is subject to the principal's control.'" <u>Indian Harbor Ins. Co. v. Valley Forge Ins. Group</u>, 535 F.3d 359, 364 (5th Cir. 2008) (quoting <u>Happy Industrial Corp. v. American Specialties, Inc.</u>, 983 S.W.2d 844, 852 (Tex. App. -- Corpus Christi 1998, pet. dism'd w.o.j.)). "To prove agency, evidence must

-28-

establish that the principal has both the right:  (1) to assign the agent's task; and (2) to control the means and details of the process by which the agent will accomplish that task." <u>Id.</u>  "It is the principal's extent of control over the details of accomplishing the assigned task that primarily distinguishes the status of independent contractor from that of agent." <u>Id.</u>  As in <u>Kuenzle</u>, the plaintiff in this action has failed to meet its <u>prima facie</u> burden of establishing the existence of the minimum contacts needed to support the exercise of personal jurisdiction because the plaintiff has failed to cite and/or proffer facts from which the court could infer that any of the SKJP entities either assigns tasks to another SKJP entity, or controls the means and details of the process by which another SKJP entity accomplishes tasks.

### (3) Corporate Separateness

Citing <u>Freudensprung v. Offshore Technical Services, Inc.</u>, 379 F.3d 327 (5th Cir. 2004), plaintiff argues that

> [p]ersonal jurisdiction is also proper over Sunshine Inc. and Sunshine Holdings because the presumption of corporate separateness with Sunshine LLC—who has conceded to jurisdiction—has been overcome due to overwhelming evidence that the three entities are not separate at all.[40]

In support of this argument plaintiff cites a 2009 press release in which "'Sunshine Kids Juvenile Products' is presented as a single enterprise announcing the 'opening of offices in Canada,'" thereby

_____

[40]Plaintiff's Response, Docket Entry No. 16, p. 8.

showing that SKJP, Inc. and SKJP LLC "hold themselves out to the public as a single enterprise."[41]   Plaintiff also cites evidence showing that Brad Keller and Constance Berger serve managerial roles in more than one of the SKJP entities, and that SKJP, LLC shares a corporate address in Naples, Florida, with SKJP Holdings, LLC, and shares a corporate address in Sumner, Washington, with SKJP, Inc.

In <u>Freudensprung</u> the Fifth Circuit articulated a nonexhaustive list of factors for courts to consider when asked to determine the separateness of corporate entities:

> (1) the amount of stock owned by the parent of the subsidiary; (2) whether the entities have separate headquarters, directors, and officers; (3) whether corporate formalities are observed; (4) whether the entities maintain separate accounting systems; and (5) whether the parent exercises complete control over the subsidiaries' general policies or daily activities.

<u>Id.</u> at 346.   Here, uncontroverted evidence contained in the declaration of Brad Keller establishes that SKJP, LLC and the other two defendant companies are separate corporate entities.   Keller states that

> SKJP LLC, SKJP Inc. and SKJP Holdings are all separate companies with separate books and records and accounting systems.   Each company, as far as I know, has observed all corporate formalities over the years.   Each company operates out of offices separate from one another, for example SKJP Inc.'s office is located in Waterloo, Ontario while SKJP's offices are in Sumner, Washington. SKJP Inc. has no ownership in Defendant SKJP LLC and

---

[41]<u>Id.</u> at 11.

vice-versa.   Similarly, SKJP Holdings is not owned by SKJP LLC [n]or SKJP Inc.[42]

Plaintiff has neither cited nor proffered any evidence that would allow the court to infer that SKJP, LLC and either of the two other defendant companies are not separate entities.   Although plaintiff asserts that many of the factors enumerated in <u>Freudensprung</u> involve "facts that can only be gleaned through discovery,"[43] plaintiff has never contended that it needed jurisdictional discovery to respond to the defendants' motion to dismiss for lack of personal jurisdiction, and has requested jurisdictional discovery only if the court "determines jurisdiction does not exist on the current record."[44]   The plaintiff's evidence that SKJP, Inc. and SKJP, LLC issued a joint press release, that Brad Keller and Constance Berger serve managerial roles in more than one of the SKJP entities, and that SKJP, LLC shares a corporate address in Naples, Florida, with SKJP Holdings, LLC and shares a corporate address in Sumner, Washington, with SKJP, Inc. does not constitute a <u>prima facie</u> showing that SKJP, LLC is not a separate corporate entity from either of the other two defendants.   <u>See</u> <u>Entek Corp. v. Southwest Pipe & Supply Co.</u>, 683 F.Supp. 1092, 1105 (N.D. Tex.

---

[42]Declaration of Brad Keller in Support of Defendants' Motion to Dismiss for Lack of Personal Jurisdiction, attached to Defendants' Reply, Docket Entry No. 17, ¶ 3.

[43]Plaintiff's Response, Docket Entry No. 16, p. 11.

[44]<u>Id.</u> at 2.

1988) (dismissing plaintiff's assertion that acts of a subsidiary that did business in Texas could be imputed to its parent, a non-resident defendant operating strictly as a holding company that did not offer any goods or services directly to the consuming public and finding that common ownership and directorship was insufficient evidence to support plaintiff's contention that the parent controlled the subsidiary).

    (b)  Fairness Analysis

    Because plaintiff has failed to make a prima facie showing that SKJP, Inc. and SKJP Holdings, LLC have minimum contacts with Texas needed for the court to exercise personal jurisdiction, the court need not determine whether the exercise of jurisdiction over them would offend traditional notions of fair play and substantial justice. See Felch v. Transportes Lar-Mex SA DE CV, 92 F.3d 320, 329 n.20 (5th Cir. 1996) ("As [plaintiff] failed to establish sufficient 'minimum contacts' with Texas, we need not address whether the exercise of personal jurisdiction in this case would offend traditional notions of fair play and substantial justice.").

## C.  Conclusions

    For the reasons explained above, the court concludes that the plaintiff has failed to make a prima facie showing that this court may properly exercise personal jurisdiction over defendant SKJP, Inc. or SKJP Holdings, LLC.  Accordingly, the motion to dismiss these defendants for lack of personal jurisdiction will be granted.

-32-

### III.  **Plaintiff's Request for Jurisdictional Discovery**

"If the Court determines jurisdiction does not exist on the current record, [plaintiff] has requested certain jurisdictional discovery."[45]   The party seeking discovery bears the burden of showing its necessity.  See <u>Securities and Exchange Commission v. Spence & Green Chemical Co.</u>, 612 F.2d 896, 901 (5th Cir. 1980), <u>cert. denied</u>, 101 S.Ct. 866 (1981) (holding in context of summary judgment that a party seeking discovery "may not simply rely on vague assertions that additional discovery will produce needed, but unspecified, facts").  The party seeking discovery typically meets this burden by alleging the specific facts crucial to the jurisdictional subject at issue that demonstrate a need for discovery.  <u>See</u> <u>Kelly v. Syria Shell Petroleum Development B.V.</u>, 213 F.3d 841, 852 (5th Cir.), <u>cert. denied</u>, 121 S.Ct. 426 (2000).

Plaintiff did not seek jurisdictional discovery before responding to the defendants' motion to dismiss for lack of personal jurisdiction, and has not even attempted to explain why jurisdiction would be found if discovery were permitted, or what discovery would reasonably be designed to uncover evidence needed to show that the court could properly exercise personal jurisdiction over SKJP, Inc. and SKJP Holdings, LLC.  Absent such explanations, the plaintiff has failed to carry its burden of showing that jurisdictional discovery is needed.  Accordingly, the plaintiff's request for jurisdictional discovery will be denied.

---

[45]<u>Id.</u>

## IV.   Motion to Dismiss for Failure to State a Claim

All defendants seek dismissal of plaintiff's claim for exemplary damages pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim for which relief may be granted.

### A.   Standard of Review

Federal Rule of Civil Procedure 12(b)(6) allows dismissal if a plaintiff fails to state a claim upon which relief may be granted.  See Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1974 (2007).  A Rule 12(b)(6) motion to dismiss requires the court to accept the factual allegations of the complaint as true, view them in a light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor.  See Doe, 528 F.3d at 418.

> When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one.  The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.

Swierkiewicz v. Sorema N.A., 122 S.Ct. 992, 997 (2002) (quoting Scheuer v. Rhodes, 94 S.Ct. 1683, 1686 (1974)).  A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."  Twombly, 127 S.Ct. at 1974.

### B.   Analysis

The Seventh Cause of Action in plaintiff's Original Complaint alleges:

> 70. Before commencing use of the SUNSHINE KIDS trademark, Defendants knew of the Sunshine Kids' use of

the SUNSHINE KIDS trademark, or had a duty to search for and find out about the Sunshine Kids' use, and to avoid use of this trademark.  Furthermore, after receiving documentary evidence of the Sunshine Kids' prior use of the SUNSHINE KIDS trademark, Defendants had a duty to cease use of this trademark.  Defendants thus began and continued use of the SUNSHINE KIDS trademark with fraud, malice, or gross negligence.

71. As a result of the fraud, malice, or gross negligence of Defendants, the Sunshine Kids has suffered harm to its business, business reputation and goodwill.

72. Since the harm caused by Defendants' actions results from fraud, malice, or gross negligence, the Sunshine Kids is entitled to exemplary damages under Chapter 41 of [the] Texas Civil Practices & Remedies Code.[46]

Defendants contend that the court should dismiss plaintiff's exemplary damages claim under Rule 12(b)(6) because exemplary damages are merely a remedy and not a cause of action or, alternatively, because this claim lacks supporting facts.[47] Plaintiff "acknowledges there is no independent cause of action for exemplary damages," and asserts that it "is merely pleading for recovery of such damages under its state law causes of action."[48] Plaintiff has not responded to the defendants' argument that its factual pleadings do not support recovery of exemplary damages.

Exemplary damages are a remedy and not a cause of action.  See Sulzer Carbomedics v. Oregon Cardio-Devices, Inc., 257 F.3d 449, 461 (5th Cir. 2001); Travelers Indemnity Co. v. Fuller, 892 S.W.2d

---

[46]Original Complaint, Docket Entry No. 1, pp. 20-21.

[47]Defendants' Motion, Docket Entry No. 11, pp. 11-12.

[48]Plaintiff's Response, Docket Entry No. 16, pp. 11-12.

848, 852 (Tex. 1995).  Plaintiff's assertion that it has merely pleaded for recovery of such damages under its state law causes of action is belied by the fact that its claim for exemplary damages is labeled as an independent, "Seventh Cause of Action" in plaintiff's Original Complaint.  Moreover, plaintiff does not dispute the defendants' contention that its Original Complaint lacks facts that if true would prove that the harm plaintiff suffered with respect to its state law causes of actions for violation of the Texas Common Law of Unfair Competition, or the Texas Anti-Dilution Statute, Tex. Bus. & Com. Code § 16.29, resulted from fraud, malice, or gross negligence as required for the recovery of exemplary damages under Texas law.  Tex. Civ. Prac. & Rem. Code § 41.003(a) ("Except as provided by Subsection (c), exemplary damages may be awarded only if the claimant proves by clear and convincing evidence that the harm with respect to which the claimant seeks recovery of exemplary damages results from:  (1) fraud; (2) malice; or (3) gross negligence.").  Accordingly, defendants' motion to dismiss the plaintiff's independent claim for exemplary damages will be granted.

## C.  Conclusions

Defendants' motion to dismiss the plaintiff's independent claim for exemplary damages will be granted, and plaintiff will be granted twenty (20) days to file an amended complaint that amends the claims that it has asserted under state law to include facts

sufficient to support the recovery of exemplary damages.  Any claims for fraud asserted in plaintiff's complaint will be subject to the pleading requirements of Federal Rule of Civil Procedure 9(b), which provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."  Fed. R. Civ. P. 9(b).  Pleading fraud with particularity in this circuit requires "[a]t a minimum . . . the particulars of time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what [that person] obtained thereby." Benchmark Electronics, Inc. v. J.M. Huber Corp., 343 F.3d 719, 724 (5th Cir.), modified on denial of rehearing on other grounds, 355 F.3d 356 (5th Cir. 2003) (quoting Tel-Phonic Services, Inc. v. TBS International, Inc., 975 F.2d 1134, 1139 (5th Cir. 1992)).

## V.  Conclusions and Order

For the reasons explained above, Defendants' Motion to Dismiss Plaintiff's Complaint for Lack of Personal Jurisdiction and for Failure to State a Claim (Docket Entry No. 11) is **GRANTED**.  This action against defendants Sunshine Kids Juvenile Products, Inc. and SKJP Holdings, LLC is **DISMISSED** for lack of jurisdiction.  The request for jurisdictional discovery that the plaintiff included in its response to the defendants' motion to dismiss (Docket Entry No. 16) is **DENIED**.  The plaintiff may file an amended complaint

within twenty (20) days for the purpose of amending the claims asserted under state law to include facts sufficient to support the recovery of exemplary damages.

    **SIGNED** at Houston, Texas, on this 17th day of December, 2009.


                                    _____
                                            SIM LAKE
                              UNITED STATES DISTRICT JUDGE